T.C. Memo. 2016-120

UNITED STATES TAX COURT

EMMANUEL UGOCHUKWU AMADI AND
OMOLE AINA AMADI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11172-13.                    Filed June 21, 2016.

Omotayo J. Lawal, for petitioners.

Portia Neomi Rose, Gordon P. Sanz, and Yvette Nunez, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  With respect to petitioners' Federal income tax for 2009
and 2010, the Internal Revenue Service (IRS or respondent) determined defici-
encies of $38,203 and $29,601, respectively, and accuracy-related penalties under

[*2] section 6662(a) of $7,598 and $5,878, respectively.[1]  The parties filed before trial a stipulation of settled issues in which petitioners admitted their liability for a section 6662(a) penalty for each year and made various other concessions.[2]  The issues remaining for decision involve deductions for three categories of expenses that petitioner-husband allegedly incurred in his consulting business.  Respondent disallowed these deductions in their entirety for lack of substantiation.  We will sustain respondent's determination.

FINDINGS OF FACT

Some of the facts were stipulated and are so found.  The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners re-sided in Texas when they timely petitioned this Court.  All further references to petitioner in the singular are to petitioner-husband, Emmanuel Ugochukwu Amadi.

---

[1]All statutory references are to the Internal Revenue Code as in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

[2]The parties agree that:  (1) petitioners' gross income should be increased in the amount of $755, due to qualified dividends, for 2009 and 2010; (2) petitioners' gross income should be increased in the amount of $2,381, due to a capital gain, for 2009; (3) petitioners are not entitled to claim charitable contribution deduc-tions of $14,022 and $7,500 for 2009 and 2010, respectively; and (4) petitioners' Federal income tax withholding should be increased in the amount of $211, for 2009 and 2010.

**[*3]** Petitioner was born in Nigeria. After arriving in the United States he worked in the oil services industry. He was employed in the United States by Baker Hughes and other employers until 2009, when he lost his job. After several months of unemployment he decided to return to Nigeria to look for work.

Petitioner found work as a contractor for Petro-Dynamics Ltd., a Nigeria-based company that provides oil and gas drilling services. His work focused chiefly on onshore drilling rigs. He returned regularly to the United States, but resided in Port Harcourt when in Nigeria. He appears to have maintained an office in Port Harcourt, either at his residence or nearby.

Petitioners included with their return for each year a Schedule C, Profit or Loss From Business, reporting income and expenses for petitioner's Nigerian business activity. Each Schedule C described petitioner's activity as "drilling consultancy" and listed his business address as petitioners' home address in Texas. The Schedule C for 2009 reported income of $120,500 and expenses of $110,825, for a reported net profit of $9,675. The Schedule C for 2010 reported income of $90,000 and expenses of $102,169, for a reported net loss of ($12,169).[3]

_____

[3]Petitioners conceded at trial that petitioner's Nigerian-source income was not eligible for exclusion as "foreign earned income" because he did not meet the requirements of section 911(d)(1).

[*4]   Upon examination of these returns, the IRS allowed petitioners' claimed Schedule C deductions for office expenses, meals, telephone, and oil-rig-related clothing, in the aggregate amounts of $8,425 for 2009 and $8,957 for 2010.  The IRS disallowed, for lack of substantiation, the deductions petitioners claimed for the following expenses:

| Expense | 2009 | 2010 |
|---------|------|------|
| Contract labor | $62,200 | $56,512 |
| Advertising | 25,000 | 15,200 |
| Travel | 15,200 | 21,500 |
| Total disallowed | 102,400 | 93,212 |

In an effort to substantiate these expenses, petitioner at trial offered his testimony and limited documentary evidence.  We did not find petitioner's testimony credible.  His documentary evidence consisted of bank statements from his Nigerian bank and what purported to be cash receipts and invoices from various vendors.  Few of these documents, apart from the bank statements, appeared to be genuine.

Petitioner testified that he incurred expenses for two types of contract labor in Nigeria.  The first was for security at his office and residence.  To document those expenses, he submitted five purported "cash receipts" from Joston Enter-

**[*5]** prises, stating that it had received various amounts of cash from petitioner for supplying "3mobil [sic] men for the provision of security at Office/Residential premises in Port Harcourt" for various periods during 2009 and 2010. He submitted no other documentation for these expenses.

The second type of contract labor expense was for workers petitioner allegedly hired to help him with minor tasks connected with his drilling activities. To document those expenses, he submitted three purported "cash receipts" from Joston Enterprises, stating that it had received various amounts of cash from petitioner for furnishing "labour supply" for various six-month periods. These receipts do not indicate how many workers were provided or how many days or weeks they supposedly worked. Petitioner was unable to identify any of the workers by name. He submitted no other documentation for these expenses.

These "cash receipts" from Joston Enterprises do not bear the earmarks of authenticity. The descriptions of the services provided, allegedly drafted at various times over two years, are exactly the same, even to the point of including the same typographical error. The receipts are all numbered, but the numbers on the receipts for the later months are often lower than the numbers on the receipts for the earlier months. It appeared to the Court that these receipts were created at the same time by cutting-and-pasting text electronically.

**[\*6]**  Petitioner testified that he incurred two types of advertising expenses.  The first was for items that he allegedly donated to the local community to generate goodwill.  To document those expenses, he submitted two purported "invoices" from House of Hope, which he first testified was a church and later testified was a supplier.  The two supposed invoices bear the same date, one year apart.  They describe petitioner as a "donor," but incongruously proceed to list products that he supposedly purchased from House of Hope, namely, 7,000 plastic tables, 2,000 plastic chairs, and 12 bags of rice.  Each "invoice" bears an identical notation: "Goods delivered in good condition.  No refund after payment."

The second type of supposed advertising expense was for branded items petitioner allegedly purchased for distribution to enhance his name recognition.  To document those expenses, he submitted two purported "invoices" from Deep Multimedia.  These "invoices" state that petitioner during 2009-2010 purchased 1,500 branded T-shirts, 2,500 branded towels, 2,000 branded pens, 2,050 branded jugs, 2,500 diaries, and 2,400 calendars.  Each purported invoice bears a notation identical to, and in the same typeface and font as, the notation appearing on the two House of Hope invoices:  "Goods delivered in good condition.  No refund after payment."  Though supposedly generated by different suppliers in different years, all four invoices are printed using exactly the same template.  It appeared to

**[\*7]** the Court that all four were created at the same time by cutting-and-pasting text electronically.

Petitioner testified that he incurred two types of travel expenses. The first was for rental of cars and trucks that he and his supposed contract workers allegedly used for transport to the drilling sites. To document those expenses, petitioner submitted purported "cash receipts" from Cajetan Car Hire, stating that it had received various amounts of cash from petitioner for "provision of car hiring service" for various six-month periods. These "receipts" do not indicate what the vehicles were or how many of them were supplied. Petitioner testified that he occasionally visited his ancestral village in Nigeria. He offered no evidence to demonstrate that the vehicles he allegedly rented were used for business rather than personal purposes.

The second type of travel expense was for airfare and hotel costs petitioner allegedly incurred during 2010 for travel to locations distant from Port Harcourt. To document those expenses, petitioner submitted a purported "cash receipt" from Hamca Travels and Tours, stating that it had received about $8,000 in cash from petitioner for the "cost of local travel and hotel accommodation to Benin, Warri, Abuja, and Lagos, for year 2010." This purported receipt is dated January 11, 2010. Petitioner could not explain how a receipt could have been issued in early

**[\*8]** January 2010 for travel costs that he incurred throughout that year. Even if one were to assume that this receipt was genuine, petitioner offered no evidence to establish what these trips involved or that they were business-related.

OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

Section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Deductions are a matter of legislative grace; the taxpayer bears the burden of substantiating his claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present accurate records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, at \*17.

**[\*9]**   In certain circumstances, the Court may approximate the amount of an expense if the taxpayer proves that it was incurred but cannot substantiate the exact amount.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  But the taxpayer must provide some basis for such an estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes more rigorous substantiation requirements for certain expenses, including those for "travel."  Such deductions are disallowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement:  (1) the amount of the expense; (2) the time and place of the travel or use of the property; and (3) the business purpose of the expense.  Ibid. Expenses subject to section 274(d) cannot be estimated using the Cohan rule.  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).

We find that petitioner has completely failed to substantiate the expenses in question.  His Nigerian bank account records were introduced into evidence; they show numerous payments by check and bank transfer, but no payments of any kind to the vendors petitioner supposedly paid.  Petitioner testified that he withdrew cash from that account and delivered it to his vendors in exchange for "cash receipts."  But these alleged payments often exceeded $10,000 and totaled

**[*10]** $196,000 over the two years. Petitioner testified that he faced serious security risks in Nigeria; if that was so, it is implausible that he would have hand-carried large amounts of cash when he could have safely effected payment by check or bank transfer. The implausibility of petitioner's story is confirmed by review of the purported invoices and receipts, none of which appears to be genuine.

Acknowledging defects in his documentation, petitioner urges that we allow him a "reasonable amount of expenses" for each year. Petitioner's travel expenses are subject to section 274(d) and are thus ineligible for estimating. And we will not attempt to estimate his advertising or contract labor expenses because he has failed to convince us that he actually incurred any expenses of either sort. A trial court "may not be compelled to guess or estimate, * * * even though such an estimate, if made, might have been affirmed." See Hom v. Commissioner, __ F. App'x __, 2016 WL 1161623 (9th Cir. Mar. 24, 2016) (quoting Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991)); Miller v. Commissioner, T.C. Memo. 1988-15. We would not be inclined to exercise our discretion to estimate expenses for a taxpayer who presented this Court with fictitious documents, even if he had convinced us that he actually incurred some expenses, which petitioner did not do.

[*11] To reflect the foregoing,

Decision will be entered for

respondent.